383 So.2d 219 (1980)
Fredford James EUTSEY, Appellant,
v.
STATE of Florida, Appellee.
No. 55985.
Supreme Court of Florida.
April 24, 1980.
*221 Alan H. Schreiber, Public Defender; and Channing E. Brackey, Asst. Public Defender, Fort Lauderdale, for appellant.
Jim Smith, Atty. Gen., and Mary E. Marsden, Asst. Atty. Gen., West Palm Beach, for appellee.
ALDERMAN, Justice.
The imposition of an increased sentence pursuant to section 775.084, Florida Statutes (1977),[1] Florida's habitual offender act, *222 is before us on direct appeal because the trial court, in imposing an enhanced sentence, upheld the constitutionality of this act against a challenge that it violated appellant's right to due process of the law. We hold that the act is constitutional, and we affirm the enhanced sentence.
The appellant, Fredford Eutsey, was tried and convicted of burglary of a dwelling. The State thereafter filed a written notice advising Eutsey that it would seek to have him declared an habitual offender. The notice alleged that the offense for which Eutsey was convicted and would be sentenced was committed within five years of his prior felony conviction for attempted armed robbery on or about January 23, 1976, and that imposition of a sentence under section 775.084 is necessary for the protection of the public from further criminal activity by Eutsey. Eutsey moved to strike the notice on the basis that it was vague and indefinite and also moved to dismiss the notice on the basis that the habitual offender act does not afford him the full panoply of due process rights accorded an accused in a criminal trial determining guilt. During *223 the hearing on these motions, Eutsey generally objected to the admissibility of presentence investigation reports in habitual offender sentencing proceedings; however, he made no specific challenge to any portion of his presentence report, and he did not expressly dispute the truth of any matters contained within this report. In denying the motion to strike, the trial court held that the notice was sufficient and concluded that Eutsey was in no way prejudiced. In denying the motion to dismiss, the court found that many of the rights which Eutsey claimed were allowed under the habitual offender act. It further noted that Eutsey's presentence report had been available to defense counsel at all times.
At the conclusion of the hearing, the trial court found, beyond and to the exclusion of every reasonable doubt, that Eutsey is the same person who was convicted of attempted robbery on January 23, 1976, and received a three-year sentence; that he is the same person who was convicted on July 20, 1978, of burglary in the present case; that each is a felony; and that the latter conviction was within five years of the earlier conviction, and commission of the latter crime was within nineteen or twenty days after Eutsey's release from prison on the first felony for which he was sentenced. The court further found that Eutsey had not received a pardon and that his convictions had not been set aside in post-conviction relief proceedings. The court went on to make extensive specific findings relative to its conclusion that an enhanced penalty was necessary for the protection of the public. The court then sentenced Eutsey to twenty-five years in the state prison.
The purpose of the habitual offender act is to allow enhanced penalties for those defendants who meet objective guidelines indicating recidivism. The enhanced punishment, however, is only an incident to the last offense. The act does not create a new substantive offense. It merely prescribes a longer sentence for the subsequent offenses which triggers the operation of the act. The determination of whether one may be sentenced as an habitual offender is independent of the determination of guilt of the underlying substantive offense, and new findings of fact separate and distinct from the crime charged are required. Reynolds v. Cochran, 138 So.2d 500 (Fla. 1962).
Relying upon Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), Eutsey challenges the constitutionality of section 775.084 on the basis that it deprived him of due process of the law because it fails to provide him the same rights accorded an accused in a criminal trial. The State responds that Specht is distinguishable and that its holding should not be extended to encompass habitual offender proceedings but rather we should rely essentially on Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), for disposition of this matter.
Specht v. Patterson involved a challenge to Colorado's sex offender statute on the basis that the act allowed a critical finding to be made without a hearing and on the basis of hearsay evidence to which defendant had no access. The Supreme Court held the Colorado act unconstitutional and said: "Due process, in other words, requires that he be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own. And there must be findings adequate to make meaningful any appeal that is allowed." 386 U.S. at 610, 87 S.Ct. at 1212. The Court distinguished Specht from its earlier decision in Williams v. New York where it held that the due process clause does not require that a defendant be permitted to confront and to cross-examine witnesses as to his prior criminal record considered by the court in sentencing him in a regular sentencing. The Supreme Court adhered to Williams but declined to extend it to Specht because it determined that the Colorado sex offender statute presented a different situation in that it made one conviction the basis for commencing another proceeding under another act rather than making the commission of a specific crime the basis for sentencing.
*224 Eutsey was accorded all due process rights specified in Specht, but he contends he is entitled to more. He argues that in view of Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), which made the right to trial by jury on the issue of guilt in criminal cases applicable to the states, and In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), which made the standard of proof beyond a reasonable doubt on the question of guilt applicable to the states, he is also entitled to these rights in habitual offender proceedings.
The federal act that allows increased sentences for special offenders, 18 U.S.C. § 3575, grants to defendants procedural safeguards substantially similar to those provided by Florida's habitual offender statute. The rationale of the United States Court of Appeals, Fifth Circuit, in United States v. Bowdach, 561 F.2d 1160 (5th Cir.1977), upholding the constitutionality of the federal act, is persuasive. In Bowdach, the Fifth Circuit concluded that Specht should be limited to those due process guarantees expressly enumerated in that opinion of the Supreme Court and that Specht does not require proof beyond a reasonable doubt and trial by jury in a sentencing proceeding of a defendant under the recidivist portion of 18 U.S.C. § 3575. See also United States v. Neary, 552 F.2d 1184 (7th Cir.1977).
Additional support for our decision is found in Hollis v. Smith, 571 F.2d 685 (2d Cir.1978). In that case, the Second Circuit held that a New York sex offender statute, which did not provide for trial by jury and did not require proof beyond a reasonable doubt in the separate sentencing proceeding, did not deprive the defendant of due process of the law. The court stated:
We are wholly unconvinced that even if the Specht Court had had the benefit of the later Duncan decision, it would have required Colorado to afford a jury trial under its Sex Offenders Act. One reason is the difference in history and tradition recounted above; the importance of this was underscored in McKeiver v. Pennsylvania, 403 U.S. 528, 548, 91 S.Ct. 1976, [1987], 29 L.Ed.2d 647 (1971), where, particularly due to such a difference in history, the Supreme Court held there was no right to a jury trial at juvenile delinquency proceedings despite its holding in In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), that the due process clause applies to such proceedings. A second consists of the considerations quoted from the Task Force Report. A third is the difference in the jury's office. There still is validity in the distinction drawn by Mr. Justice Black in Williams, 337 U.S. at 246-47, 69 S.Ct. at 1083, between the trial's role of determining "whether a defendant is guilty of having engaged in certain criminal conduct of which he has been specifically accused," using "rules of evidence... which narrowly confine the trial contest to evidence that is strictly relevant to the particular offense charged," and the task of determining whether a defendant is a danger to society or will benefit from institutional treatment... . There is no authority binding upon us which holds that the procedure in proceedings relating solely to punishment, even when an additional fact has to be established, must conform precisely to those in proceedings relating to guilt, and we see no basis in principle for so holding... .
571 F.2d at 693. The Second Circuit, in Hollis, also rejected defendant's contention that this type of separate sentencing proceeding required proof beyond a reasonable doubt, concluding that In re Winship does not cover this type of proceeding.
We likewise conclude that neither Duncan nor In re Winship expand the due process requirements enumerated in Specht and that habitual offender proceedings do not require the full panoply of rights afforded a criminal during his trial as to guilt. We hold that the procedural safeguards afforded a defendant by section 775.084 are adequate and are in accordance with the due process requisites announced by the Supreme Court in Specht v. Patterson.
Additionally, incorporated in Eutsey's constitutional attack is a general challenge *225 to the use of presentence investigation reports in habitual offender proceedings. He argues that the use of these reports impinges on his rights to confrontation and cross-examination. We reject this contention. There is no constitutional prohibition against the use of presentence investigation reports in habitual offender proceedings; however, because the trial court must make separate statutory findings to justify an enhanced sentence, it is imperative, where the defendant disputes the truth of hearsay statements contained in presentence investigation reports, which would be material to the statutory findings which the trial court is required to make, that the court require the State to produce corroborating evidence. United States v. Fatico, 579 F.2d 707 (2d Cir.1978); United States v. Hodges, 556 F.2d 366 (5th Cir.1975), cert. denied, 434 U.S. 1016, 98 S.Ct. 735, 54 L.Ed.2d 762 (1978); United States v. Weston, 448 F.2d 626 (9th Cir.1971), cert. denied, 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972).
In Adams v. State, 376 So.2d 47 (Fla. 1st DCA 1979), Judge Robert Smith, writing for the First District Court of Appeal, analyzed in depth the use of presentence investigation reports and their hearsay contents in habitual offender proceedings. This decision construed subsections (3)(a) and (3)(c) of section 775.084 so as to preserve legitimate access by the sentencing courts to presentence investigation reports while also affording to defendants their due process rights. One of the questions in that case was the extent to which the trial court's determination that an extended sentence is "necessary for the protection of the public from further criminal activity" by the defendant may be influenced by the probation officer's presentence investigation report as distinguished from the evidence conventionally produced in court. The district court explained that the finding by the court that it is necessary to protect the public from defendant, although essentially a prediction, depends on certain identifiable discrete facts such as his general course of behavior, his family, his education, vocation, and so on. We adopt the following language from Adams v. State:
Once admitting the possibility in principle of distinguishing such discrete "facts" from the body of general information revealing the defendant's personality in the presentence report, one's task is simply to judiciously classify, in those terms, the hearsay so represented. Specht-sponsored rights of witness confrontation and cross-examination are to be accorded in respect to hearsaid "facts", not otherwise corroborated, which particularly show the defendant's criminal propensity, and so particularly impel a prediction that extended imprisonment is necessary to protect the public from it. The court otherwise remains free to inform itself as in ordinary sentencing through presentence report hearsay, subject to the defendant's right to produce his own witnesses, and his right of allocution.
.....
If the defendant disputes the truth of presentence report hearsay in respect to which he asserts rights of confrontation and cross-examination, and he wishes to exercise those rights, he must of course timely say so. Nukapigak v. State, 576 P.2d 982 (Alaska 1978); State v. Wells, 265 N.W.2d 239 (N.D. 1978); see also U.S. v. Warme, 572 F.2d 57 (2d Cir.1978), cert. den., 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 393 (1978). It follows that the sentencing court must devise orderly procedures for identifying hearsay in the presentence report which is disputed by the defendant, which the court intends to consider in its potential Section 775.084 findings, and which the defendant asserts, and the court finds, is subject to witness confrontation and cross-examination rights. See, e.g., 18 U.S.C. Section 3575(b).
If the defendant is effectively to exercise his right of confrontation and cross-examination of witnesses in respect to hearsaid "facts" in the presentence report otherwise uncorroborated, which particularly evidence his criminality, the defendant must know the report contains such *226 hearsay. Not otherwise can the defendant contest the truth of the critical hearsay, call on the court to decide whether it is of such a nature as to require corroboration, and demand his rights of confrontation and cross-examination of corroborating witnesses. Even with respect to hearsay "background" facts which do not singly point to the defendant's future criminality, the defendant has the right in all sentencing proceedings, more especially in Section 775.084 proceedings, to offer "submissions and evidence ... which are relevant to the sentence." Fla. R.Crim.P. 3.720(b); see also the Committee Note to that rule... .
376 So.2d at 56.
Judge Smith also correctly pointed out that the Specht -based confrontation and cross-examination rights in section 775.084 proceedings do not reach hearsay repetition of ingredient facts of the offense for which the defendant is to be sentenced and that the sentencing court, in predicting the defendant's future criminality, may freely rely on facts which the defendant admitted in previous judicial proceedings, or which were proved by witnesses who were subject to confrontation and cross-examination.
We hold that defendant and his counsel should be provided a copy of the presentence report, including any part of the confidential section that the court may intend to rely on for any purpose under section 775.084, sufficiently in advance of the hearing to permit defendant adequate time to prepare and to respond, pursuant to any reasonable requirements imposed by the trial court for contesting the hearsay, if he wishes to contest any hearsay in the presentence report.
In the present case, Eutsey was given full access to the presentence investigation report and was given full opportunity to contest any part of its contents. He did not dispute any particular information contained in the report, however, and only made a general objection to its use in this type of sentencing proceedings. See McClain v. State, 356 So.2d 1256 (Fla. 2d DCA 1978).
Eutsey additionally maintains that he was denied due process because the findings of fact of the trial court are inadequate to make meaningful his appeal. Section 775.084(3)(d) requires that the trial court make findings of fact that show on their face that an extended term is necessary to protect the public from defendant's further criminal conduct. These findings, however, need not be in writing but may be reported in the transcript of the sentencing hearing. King v. State, 369 So.2d 1031 (Fla. 4th DCA 1979). The findings of the trial court in the present case are more than sufficient to make Eutsey's appeal of his enhanced sentence meaningful.
Eutsey's contentions that the evidence was insufficient to declare him an habitual offender and that prejudical error was committed by the State's failure to disclose certain matters are without merit. We also reject his contention that the State failed to prove that he had not been pardoned of the previous offense or that it had not been set aside in a post-conviction proceeding since these are affirmative defenses available to Eutsey rather than matters required to be proved by the State.
Accordingly, having found that section 775.084 is facially constitutional and that no reversible error was committed by the trial court, we affirm the sentence.
It is so ordered.
ADKINS, BOYD, OVERTON, SUNDBERG and McDONALD, JJ., concur.
ENGLAND, C.J., concurs in part and dissents in part with an opinion.
ENGLAND, Chief Justice, concurring in part/dissenting in part.
I concur with the Court's determination that section 775.084, Florida Statutes (1977), is facially constitutional. I further agree that section 775.084(3)(d), and due process, require the trial court to make findings of fact which show on their face that an extended sentence is necessary to protect the *227 public from defendant's further criminal conduct. I recognize that findings of fact need not be in writing.[*]
My review of the record in this case, however, suggests that the trial court's oral findings, reflected in the transcript of the sentencing hearing, were insufficient to allow meaningful appellate review. Judge Smith noted in Adams v. State, 376 So.2d 47, 58-59 (Fla. 1st DCA 1979), that
[t]he statutory requirement for findings of fact, capable of review on appeal, is the cap of a legislative purpose which ... assures the defendant in Section 775.084 proceedings of [due process] ....
....
... In order that an appellate court may perform its duty to review the sentencing court's ultimate finding . . we must be apprised of the underlying facts and circumstances which the trial judge relied on in making that finding. Otherwise, the appellate court will be left with the hopeless task of determining from the raw data in the presentence report and elsewhere what material might have influenced the trial judge to the ultimate finding .. . and, in a real sense, the appellate court will be put in a position of duplicating the sentencing function which is properly and exclusively that of the trial court.
This case should be remanded for a new enhanced sentencing proceeding.
NOTES
[1] Section 775.084, Florida Statutes (1977), provides:

775.084 Habitual felony offenders and habitual misdemeanants; extended terms; definitions; procedure; penalties. 
(1) As used in this act:
(a) "Habitual felony offender" means a defendant for whom the court may impose an extended term of imprisonment, as provided in this section, if it finds that:
1. The defendant has:
a. Previously been convicted of a felony in this state;
b. Twice previously been convicted of a misdemeanor of the first degree in this state or of another qualified offense for which the defendant was convicted after the defendant's 18th birthday;
2. The felony for which the defendant is to be sentenced was committed within 5 years of the date of the conviction of the last prior felony, misdemeanor, or other qualified offense of which he was convicted, or within 5 years of the defendant's release, on parole or otherwise, from a prison sentence or other commitment imposed as a result of a prior conviction for a felony or other qualified offense, whichever is later;
3. The defendant has not received a pardon for any felony or other qualified offense that is necessary for the operation of this section; and
4. A conviction of a felony, misdemeanor, or other qualified offense necessary to the operation of this section has not been set aside in any post-conviction proceeding.
(b) "Habitual misdemeanant" means a defendant for whom the court may impose an extended term of imprisonment, as provided in this section, if it finds that:
1. The defendant has at least twice previously been convicted of the same crime committed at different times after the defendant's 18th birthday;
2. The misdemeanor for which the defendant is to be sentenced was committed within 2 years of the date of the commission of the last prior crime or within 2 years of the defendant's release, on parole or otherwise, from a prison sentence or other commitment imposed as a result of a prior conviction for a crime, whichever is later;
3. The defendant has not received a pardon on the ground of innocence for any crime that is necessary for the operation of this section; and
4. A conviction of a crime necessary to the operation of this section has not been set aside in any post-conviction proceeding.
(c) "Qualified offense" means any offense in violation of a law of another state or of the United States that was punishable under the law of such state or the United States at the time of its commission by the defendant by death or imprisonment exceeding 1 year or that was equivalent in penalty to a misdemeanor of the first degree.
(2) For the purposes of this section, the placing of a person on probation without an adjudication of guilt shall be treated as a prior conviction if the subsequent offense for which he is to be sentenced was committed during such probationary period.
(3) In a separate proceeding, the court shall determine if it is necessary for the protection of the public to sentence the defendant to an extended term as provided in subsection (4) and if the defendant is an habitual felony offender or an habitual misdemeanant. The procedure shall be as follows:
(a) The court shall obtain and consider a presentence investigation report prior to the imposition of a sentence as an habitual felony offender or an habitual misdemeanant.
(b) Written notice shall be served on the defendant and his attorney a sufficient time prior to the entry of a plea or prior to the imposition of sentence so as to allow the preparation of a submission on behalf of the defendant.
(c) Except as provided in paragraph (a), all evidence presented shall be presented in open court with full rights of confrontation, cross-examination, and representation by counsel.
(d) Each of the findings required as the basis for such sentence shall be found to exist by a preponderance of the evidence and shall be appealable to the extent normally applicable to similar findings.
(e) For the purpose of identification of an habitual felony offender or an habitual misdemeanant, the court shall fingerprint the defendant pursuant to s. 921.241.
(4)(a) The court, in conformity with the procedure established in subsection (3) and upon a finding that the imposition of sentence under this section is necessary for the protection of the public from further criminal activity by the defendant, shall sentence the habitual felony offender as follows:
.....
(c) If the court decides that imposition of sentence under this section is not necessary for the protection of the public, sentence shall be imposed without regard to this section. At any time when it appears to the court that the defendant is an habitual felony offender or an habitual misdemeanant, the court shall make that determination as provided in subsection (3).
(d) A sentence imposed under this section shall not be increased after such imposition.
[*] Phipps v. State, 352 So.2d 102 (Fla. 1st DCA 1977).